739 F.2d 1395
 1985 A.M.C. 2408
 In The Matter of the Complaint of William McLINN, as Owner
of the F/V FJORD, etc.
In the Matter of the Complaint of Gilbert Jack JOHNSON and
Jack Stewart Johnson, as owners of the F/V
SUPERSONIC, etc.
Frank CHURCHILL, as the Informal Administrator of the Estate
of Patrick Churchill, and Dale Carlough,
Plaintiffs-Appellants,
v.
The F/V FJORD etc., et al., Defendants,
and
The F/V SUPERSONIC, her engines, tackle, apparel,
appliances, equipment, apparatus and furniture; Gilbert
Johnson, part owner and/or operator of said F/V SUPERSONIC;
Jack Johnson, part owner of said F/V SUPERSONIC, Defendants-
Appellees.
 No. 82-3644.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted En Banc
Feb. 15, 1984.
Decided Aug. 7, 1984.
 
 Gerald W. Markham, Kodiak, Alaska, for plaintiffs-appellants.
 Kenneth F. Brittain, James M. Powell, Hughes, Thorsnes, Gantz & Powell, Anchorage, Alaska, for defendants-appellees.
 Appeal from the United States District Court for the District of Alaska.
 Before BROWNING, Chief Judge, WALLACE, J. BLAINE ANDERSON, HUG, TANG, SCHROEDER, FLETCHER, PREGERSON, FERGUSON, NELSON, and REINHARDT, Circuit Judges.
 HUG, Circuit Judge:
 
 
 1
 This is an admiralty case in which a key issue is an interpretation of state law. We took this case en banc, at the request of the three-judge panel that initially heard this case, to decide whether we should accord special deference to a district judge's interpretation of state law or whether we should review such determinations under the independent de novo standard that we apply to a district judge's interpretation of federal law.
 
 
 2
 This case involves a personal injury action and a wrongful death action arising out of the navigation of three skiffs, two of which collided off Kodiak Island, Alaska. As a part of that action, the plaintiffs asserted an in personam liability claim against two of the defendants based upon an Alaska statute. The interpretation of this statute is the issue of state law that presently concerns us. There has been no definitive interpretation by the Alaska Supreme Court. The district judge held that the statute did not apply to the circumstances of this case. The three-judge appellate panel of this court unanimously requested en banc review because they found the standard of review to be controlling. The panel indicated that if the question of law were reviewed under the deferential standard that we have applied in the past, which permits reversal only for clear error, then they would affirm; but if they were to review the determination under an independent de novo standard, they would reverse.
 
 
 3
 Generally in the past we have applied a deferential standard of review to a district judge's construction of the law of the state in which he or she sits, accepting that construction unless it is "clearly wrong." Jablonski By Pauls v. United States, 712 F.2d 391, 397 (9th Cir.1983); Fleury v. Harper & Row, Publishers, Inc., 698 F.2d 1022, 1026 (9th Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983); Airlift International, Inc. v. McDonnell Douglas Corp., 685 F.2d 267, 269 (9th Cir.1982); Camacho v. Civil Service Commission, 666 F.2d 1257, 1262 (9th Cir.1982); Gaines v. Haughton, 645 F.2d 761, 770 (9th Cir.1981), cert. denied, 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982).[1] Today we adopt as the law of the circuit the rule that questions of state law are reviewable under the same independent de novo standard as are questions of federal law. In this case, the question of state law arose in an admiralty action; however, our standard of review of a district court's interpretation of state law would be the same in a diversity case or any other case in which the district court's decision involves state law.
 
 
 4
 In our view, a decision to give less than full independent de novo review to the state law determinations of the district courts would be an abdication of our appellate responsibility. Every party is entitled to a full, considered, and impartial review of the decision of the trial court. We review questions of fact under the clearly erroneous standard and we review conclusions of law de novo. There is no justification for being less thorough, for abdicating any portion of our appellate responsibility, or for curtailing the parties' appellate rights simply because the law involved is state law. The parties are entitled to the same careful, independent consideration of the issues of law by the appellate court whether the case involves state law or federal law.
 
 
 5
 The parties are accorded independent de novo review of issues of law in the appellate courts, not because of any greater wisdom of appellate judges than of trial judges, but because of the structural differences between the two courts. This court, sitting en banc, has recently considered at length the structural relationship between the district courts and the court of appeals. United States v. McConney, 728 F.2d 1195, 1201-04 (9th Cir.1984) (en banc). We observed that the standards of review we apply to trial court decisions have been developed to protect the parties' rights to appeal and to achieve sound judicial administration by recognizing the structural differences in the two types of courts. Thus, the application of Fed.R.Civ.P. 52(a)'s clearly erroneous standard to the district courts' factual determinations "emphasizes ... the trial judge's opportunity to judge the accuracy of witnesses' recollections and make credibility determinations ...." Id. at 1201. On the other hand, we observed in McConney that the application of the de novo standard to the trial courts' conclusions of law reflects a different policy concern. As we stated in McConney:
 
 
 6
 Structurally, appellate courts have several advantages over trial courts in deciding questions of law. First, appellate judges are freer to concentrate on legal questions because they are not encumbered, as are trial judges, by the vital, but time-consuming, process of hearing evidence. Second, the judgment of at least three members of an appellate panel is brought to bear on every case. It stands to reason that the collaborative, deliberative process of appellate courts reduces the risk of judicial error on questions of law. Thus, de novo review of questions of law, like clearly erroneous review of questions of fact, serves to minimize judicial error by assigning to the court best positioned to decide the issue the primary responsibility for doing so.
 
 
 7
 Id. (footnote omitted).
 
 
 8
 As noted above, we apply the de novo standard to the trial courts' determinations of federal law questions. In re Bialac, 712 F.2d 426, 429 (9th Cir.1983); Hoptowit v. Ray, 682 F.2d 1237, 1245 (9th Cir.1982); United States v. One Twin Engine Beech Airplane, 533 F.2d 1106, 1108 (9th Cir.1976). When the trial courts are called upon to resolve questions of foreign law, we also review their conclusions under the de novo standard. Fed.R.Civ.P. 44.1. See also Kalmich v. Bruno, 553 F.2d 549, 552 (7th Cir.), cert. denied, 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977); 9 C. Wright & A. Miller, Federal Practice & Procedure Sec. 2446 (1971). There is no sound reason why we have a lesser appellate duty to the parties to make a correct, independent determination when the question is one of state law. The policy concerns supporting the de novo standard apply as well to questions of state law as to questions of federal law. The appellate function is the same in each case and the same structural advantages encourage correct legal determinations.
 
 
 9
 The parties to a civil action may appeal "as a matter of right" under Fed.R.App.P. 3 from the final judgment of a district court to the circuit court of appeals except where direct review may be had in the Supreme Court. See 28 U.S.C. Sec. 1291 (1982); 9 J. Moore, B. Ward & J. Lucas, Moore's Federal Practice p 203.03 (2d ed. 1980); 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3901 at 398 (1976); see also United States v. De Bright, 730 F.2d 1255, 1259 (9th Cir.1984) (en banc) (statutory right of appeal of criminal defendant under 28 U.S.C. Sec. 1291). The Supreme Court has direct appellate review of district court decisions in a few cases under 28 U.S.C. Secs. 1252 and 1253.
 
 
 10
 It has been argued that Supreme Court precedent requires our deference to conclusions of state law by the district court because the Supreme Court has chosen not to review questions of state law in a number of cases and has deferred to the interpretation of the lower courts. In each instance, however, the parties had already received the mandatory appellate review in the circuit court. In none of these cases was the Supreme Court exercising direct appellate review from the district court. For example, in Runyon v. McCrary, 427 U.S. 160, 181-82, 96 S.Ct. 2586, 2599-2600 (1976), it is apparent that the Supreme Court did not defer to the initial conclusion by the trial judge, but accepted the determination by the appellate court.
 
 
 11
 The petitioners' contention is certainly a rational one, but we are not persuaded that the Court of Appeals was mistaken in applying the two-year state statute. The issue was not a new one for that court, for it had given careful consideration to the question of the appropriate Virginia statute of limitations to be applied in federal civil rights litigation on at least two previous occasions.... We are not disposed to displace the considered judgment of the Court of Appeals on an issue whose resolution is so heavily contingent upon an analysis of state law, particularly when the established rule has been relied upon and applied in numerous suits filed in Federal District Courts in Virginia. In other situations in which a federal right has depended upon the interpretation of state law, "the Court has accepted the interpretation of state law in which the District Court and the Court of Appeals have concurred even if an examination of the state-law issue without such guidance might have justified a different conclusion." Bishop v. Wood, 426 U.S. 341, 346, and n. 10 [96 S.Ct. 2074, 2078, and n. 10, 48 L.Ed.2d 684], citing, inter alia, United States v. Durham Lumber Co., 363 U.S. 522 [80 S.Ct. 1282, 4 L.Ed.2d 1371]; Propper v. Clark, 337 U.S. 472 [69 S.Ct. 1333, 93 L.Ed. 1480]; Township of Hillsborough v. Cromwell, 326 U.S. 620 [66 S.Ct. 445, 90 L.Ed. 358].
 
 
 12
 (Citations and footnote omitted; emphasis added.)
 
 
 13
 In Runyon and the cases cited in that opinion, there had been no disagreement between the district court and the court of appeals. The approach of the Supreme Court becomes more apparent in the case where the district court and the court of appeals disagree. Butner v. United States, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) is such a case. There the court of appeals, in a two-to-one decision, had reversed the district court on an issue of state law. The Supreme Court affirmed, stating "We decline to review the state law question." Id. at 57-58, 99 S.Ct. at 919. The Court thus upheld the determination of the two-judge majority on the court of appeals even though it was contrary to that of the district judge and the dissenting appellate judge. The words chosen by the Court are important in that they accurately indicate what the Supreme Court is doing: it is not giving weight or deference to the decision of the district judge or the court of appeals, rather it is simply not reviewing the state law question that has been fully reviewed and determined by the intermediate appellate court.
 
 
 14
 Implicit in the Supreme Court's practice of not reviewing the state law question is the assumption that it need not exercise its discretionary jurisdiction to do so because the appellate panel has exercised its mandatory appellate jurisdiction by giving full and independent review to the decision of the trial judge. This practice by the Supreme Court is a jurisprudential decision that recognizes the structure of the federal court system; the Supreme Court is free to conserve its discretionary powers because the parties have already been accorded full appellate review. To fulfill our role within the federal court structure, we should review all legal issues, whether of state or federal law, under the independent de novo standard.
 
 
 15
 It is most appropriate, of course, that we respect the views of the district court judges and review with great care their determinations of both state and federal law. Indeed, this respect is inherent in the adversary system, which assigns to the appellant the duty to establish the errors in the trial court's decision. The district judge is an expert in determining and applying the state law, but is no less an expert in determining and applying the federal law. There is no sound reason for according greater weight to the former than to the latter.
 
 
 16
 Our independent determination of state law should be based upon recognized sources that are available to the parties and that may be argued and contested before the district court as well as before the appellate court. These sources include the relevant statutes, legislative history, treatises, restatements, and published opinions. Our determination should not be based upon some undefined special knowledge or feeling for the state law that the district judge may be presumed to have, but that cannot be articulated by the judge, argued by the parties, or reviewed by the appellate court.
 
 
 17
 The deferential standard, whether the appellate court affirms in the absence of "clear error" or gives the "great weight" that the dissent would accord to all state law determinations by the district judge, is not based upon the reasoning and persuasiveness of the judge's decision, which is always entitled to careful consideration. Instead, it is based on an assumption that the district judge has some particular knowledge or experience in the field of law in issue that is to be given great weight apart from the authorities presented by the parties or articulated by the district judge. This is an unsound ground on which to base our decisions. First, it depends upon ad hominem factors not part of the record. Second, it invites exploration of each judge's actual experience. See, e.g., In re Big River Grain, Inc., 718 F.2d 968, 970 (9th Cir.1983) (per curiam) (comparing state court experience of district court judge and bankruptcy judge); Metropolitan Life Insurance Co. v. Kase, 718 F.2d 306, 307 (9th Cir.1983) (according less deference where panel members were former state court judges); Yamaguchi v. State Farm Mutual Automobile Ins. Co., 706 F.2d 940, 946 n. 5 (9th Cir.1983) (declining to accord deference where trial judge sitting by designation). Bringing such considerations into the decisional process is neither proper nor efficient. It shifts the focus from the appropriate legal authorities to the biography of the judge.
 
 
 18
 The present case illustrates the point. The district judge is a respected jurist sitting in the state of Alaska, a former practicing attorney in Alaska, and a former state trial judge in Alaska. One of the members of the appellate panel is also a respected jurist, a resident of the state of Alaska, a former practicing attorney there, and a former Justice of the Alaska Supreme Court. It is not sensible to give "great weight" to the decision of one of these judges and not the other. More importantly, it misdirects the focus of the inquiry.
 
 
 19
 The application of the "clear error" standard or the dissent's "great weight" standard certainly cannot be justified by any desire to conserve judicial resources or to promote administrative efficiency. The parties have a statutory right to appeal state law questions and we must undertake the same full and careful review of the pertinent legal authorities whether or not deference is to be accorded. We are the first level of appellate review of the trial court's conclusions of law. There would be no justification for us to use deference to the trial judge's determination as an excuse for cursory or more limited inquiry into the state law question. There is an entirely different situation when the Supreme Court reviews cases involving state law when there has been a thorough appellate review of the state law issue at a lower level.
 
 
 20
 It is worth noting that if the parties were to proceed in a state court to litigate a state law issue, they would have the right to an independent de novo review of the trial judge's determination by a multi-judge appellate panel with the structural advantages heretofore noted. The parties should be entitled to the same appellate consideration in the federal court system. There is no reason why an appellant should have a greater burden in seeking review of the trial court's conclusions of law because he is in a federal forum.
 
 
 21
 The dissent seems to agree that independent de novo review of the district court's conclusions of law is required, and yet it advocates a standard of deference to the decision of the trial judge. We cannot have independent de novo review and still defer to the decision of the district judge. The concepts are inconsistent. Either we defer, as we do under Fed.R.Civ.P. 52(a), or we reach an independent judgment, as we do on the district court's conclusions of federal law. The dissent would shift from a "clear error" standard of deference to a new expression of that deference that gives "great weight" to the decision of the district court. Whether this would create more or less deference is difficult to say, but it is clear that in deferring to the decision of the district court we would not be according the parties an independent determination of the law. There is a very real distinction between deferring to the conclusions of the district judge, as opposed to considering the reasoning of the district judge with the respect that is certainly due. If we give "great weight" to the conclusion of the district judge simply because it is his or her conclusion, then we have not made an independent determination of the law.
 
 
 22
 The functions of the appellate court have traditionally been described as two-fold. The first is to review for correctness, which is the prime consideration of the parties. The second is the institutional function of announcing, clarifying, and harmonizing the rules of decision employed by the legal system in which they serve. See P. Carrington, D. Meador & M. Rosenberg, Justice on Appeal, 2-3 (1976). As noted in McConney, de novo review of questions of law is dictated in part because of the precedential effect of those questions on future litigants. While the trial courts' factual determinations bind only the parties, the determination of legal issues affects the rights of future litigants. McConney, 628 F.2d at 1201. Although this aspect is not as important when we are concerned with state law as when we are concerned with federal law, because our opinions are not binding precedent, yet our determinations of state law are also of significant precedential importance. When we interpret state law under the doctrine of Erie v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), we are bound to strive for uniform application of state law in state and federal courts. Fidelity Trust Co. v. Field, 311 U.S. 169, 179-80, 61 S.Ct. 176, 179, 85 L.Ed. 109 (1940); see also Note, Deference to Federal Circuit Court Interpretations of Unsettled State Law, 1982 Duke L.J. 704, 706, 732. "Diversity jurisdiction, especially in its post-Erie incarnation, should not create needless diversity in the exposition of state substantive law." Factors etc., Inc. v. Pro Arts, Inc., 652 F.2d 278, 283 (2d Cir.1981), cert. denied, 456 U.S. 927, 102 S.Ct. 1973, 72 L.Ed.2d 442 (1982). Uniformity among federal interpretations of state law tends to create state-federal uniformity. See id. at 282. For this reason, federal court interpretations of undecided state law issues do have precedential value, see 1A J. Moore, Moore's Federal Practice, Sec. 0.309(2) at 3122, 3123 n. 19 (2d ed. 1978), and therefore deserve the attention we generally grant to the creation of precedent.
 
 
 23
 The precedential importance that our appellate determinations of state law can have can be illustrated by two Ninth Circuit cases. In 1969, the Ninth Circuit in Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp., 407 F.2d 288, 293 (9th Cir.1969), decided the issue of when a particular cause of action arose under California law for purposes of applying the statute of limitations. This holding was cited and relied upon by the California Supreme Court in Davies v. Krasna, 14 Cal.3d 502, 121 Cal.Rptr. 705, 711, 535 P.2d 1161, 1167 (1975). Both cases were then cited and relied upon in Whittaker Corporation v. Execuair Corporation, 736 F.2d 1341 (9th Cir.1984).
 
 
 24
 A second illustrative case is Scandinavian Airlines System v. United Aircraft Corp., 601 F.2d 425, 429 (9th Cir.1979), which involved an application of California's strict liability law to two large corporations contracting with each other from positions of relatively equal strength. This holding was in turn cited and relied upon by the Second Circuit in construing California law in Tokio Marine & Fire Insurance Co. v. McDonnell Douglas Corp., 617 F.2d 936, 939 (2d Cir.1980). One or both of these two circuit cases have been cited and relied upon in numerous other cases construing California law.[2] One recent Ninth Circuit case upheld the dismissal of a strict liability claim solely on the basis of the Scandanavian Airlines holding on this point of California law. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Company, Inc., 690 F.2d 1235, 1239-40 (9th Cir.1982). These cases are merely illustrative of the many cases in which we construe state law that are subsequently relied upon by other courts.
 
 
 25
 Thus it is clear that many of our decisions construing state law have significant precedential effect, even though they are not binding precedent in the state. Yet when closely analyzed, if those holdings are based on the clear error standard, they are not really holdings by appellate panels that construe state law. Instead, they are holdings that the district judges' construction of state law is not clear error.[3] We owe a greater appellate duty than this when we establish precedent to be relied upon by other trial and appellate courts. This deficiency in our present standard of review would not be alleviated by the standard proposed in the dissent. When an appellate panel is reviewing the decision of the district court under a deferential standard which accords "great weight" to the conclusions of a district judge, the holding of that panel is not an independent appellate construction of state law, but one that is greatly weighted toward the construction given by the district judge. With the significant precedential effect that our opinions construing state law can have, this affords another reason why our standard of review should be the same as the standard of review we utilize in determining questions of federal law and, indeed, the same standard utilized by the state appellate courts in reviewing the trial courts' construction of their state law--that is, an independent de novo appellate review.
 
 
 26
 There is more agreement between the majority opinion and the dissenting opinion on this standard than at first might appear. The dissent agrees that the proper exercise of our appellate function is "de novo review over all questions of law, whether state or federal." The dissent also agrees that "it is our duty to exercise our independent judgment" and that our appellate court review of state law questions should not be "narrower in character than its review of other legal questions." The dissent concedes that we cannot properly perform this appellate function under our circuit's prior "clear error" standard. Where the dissent parts company with the majority opinion is in the assertion that if we simply express this deference or weight given to the district court's conclusion in different terminology, we somehow meet this appellate obligation. In our view, if we give great weight or defer to the conclusion of the district judge, it is not an independent judgment, but a weighted or deferential judgment and the review is clearly under a narrower standard than questions of federal law.
 
 
 27
 Both the majority and the dissenting opinions agree that careful consideration should be given to the reasoned explanations of state law by the district court. The dissent completely mischaracterizes the majority opinion when it states that we adopt a view that "the district court is entitled to no consideration." It is difficult to understand how the dissent could arrive at this conclusion, when we have emphasized that the district court's reasoned explanation for a holding on a question of state law will be given full, thorough, and respectful consideration, just as it is on questions of federal law. It is even more difficult to understand how the dissent could possibly conclude that the time district courts spend "thoroughly explaining a state law is time wasted" and that "we therefore will be deprived of their expertise." This is certainly not the case with the district court's determinations of federal law, to which the same standard applies. It is inconceivable that the highly competent and thorough district judges in this circuit would in any way be dissuaded from considering just as fully and fairly questions of state law as they do questions of federal law. In fact, because it is the reasoned explanation of state law that we will look to, rather than simply the district court's conclusion, it would seem that there would be a strong incentive for thorough and well-reasoned explanations.
 
 
 28
 In conclusion, in order to perform properly the appellate function in the review of state law questions, we must apply the same standard of review as we do in determining all other questions of law. We see no justifiable reason to distinguish between the standard of review for determinations of federal law and of state law. We hold that our appellate review of conclusions of state law should be under the same independent de novo standard as conclusions of federal law.
 
 
 29
 The case is remanded to the original panel for disposition consistent with this opinion.
 
 
 30
 SCHROEDER, Circuit Judge, with whom BROWNING, Chief Judge, ANDERSON, TANG and FERGUSON, Circuit Judges, join, dissenting.
 
 
 31
 I dissent from the majority's holding that henceforward the Ninth Circuit Court of Appeals will give no special consideration whatever to the decision of a district court on the state law of its home jurisdiction. The holding is not only a major departure from our own practice, but is contrary to all the reported decisions of the other circuits as well as the views of scholarly authorities on the question.
 
 
 32
 The result can only serve as a disincentive to our district courts to explore and explain the authorities which bear on an issue of local law. It will tend to deprive the litigants of the benefit of that effort. It will encourage unsuccessful counsel to appeal on the assumption that reversals will become more frequent. Our own work will multiply. Sadly, the majority arrives at this result without an analysis of purpose, and in the face of overwhelming authority from the other circuits. We are not told why this novel view, rather than the standards applied by other circuit courts, is required to reach a just result in this or any other case.
 
 
 33
 With increasing frequency, federal courts have had to deal with unresolved issues of state law since Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In that decision Justice Brandeis declared there to be no federal general common law, 304 U.S. at 78, 58 S.Ct. at 822, and overturned the doctrine of Swift v. Tyson, 41 U.S. 1, 16 Pet. 1, 10 L.Ed. 865 (1842), that federal courts should "exercise an independent judgment as to what the common law of a state is--or should be ...." Erie, 304 U.S. at 71, 58 S.Ct. at 819. Under Erie, the federal court's functionis not to choose the rule that it would adopt for itself, if free to do so, but to choose the rule that it believes the state court, from all that is known about its methods of reaching decisions, is likely in the future to adopt.
 
 
 34
 C. Wright, Handbook of the Law of Federal Courts Sec. 58, at 375 (4th ed. 1983) ("Wright").
 
 
 35
 In addressing state law issues on appeal, circuit courts have developed the practice of giving special consideration to a district court's decisions on state law questions arising under the law of the district court's home jurisdiction. Sound practical reasons underlie the development: the appellate courts can benefit greatly from a district judge's past experience and day to day familiarity with issues of state law within that judge's state. See 9 C. Wright & A. Miller, Federal Practice and Procedure Sec. 2588, at 752 (1971) ("Wright & Miller").
 
 
 36
 While the precise articulation of the nature of the special consideration due district court decisions varies from circuit to circuit, and even from case to case within a circuit, the most common formulation is in terms of "great weight" or "substantial deference." Leading examples are: Caspary v. Louisiana Land and Exploration Co., 707 F.2d 785, 788 n. 5 (4th Cir.1983) (substantial deference); Smith v. Mobil Corp., 719 F.2d 1313, 1317 (5th Cir.1983) (quoting Avery v. Maremont Corp., 628 F.2d 441, 446 (5th Cir.1980) (great weight); Randolph v. New England Mutual Life Insurance Co., 526 F.2d 1383, 1385 (6th Cir.1975) (considerable weight); Morin Building Products Co. v. Baystone Construction, Inc., 717 F.2d 413, 416 (7th Cir.1983) ("it is only prudent to defer to the view of the district judge"); Kansas City Power and Light Co. v. Burlington Northern Railroad Co., 707 F.2d 1002, 1003 (8th Cir.1983) (great deference unless deficient in analysis or authority); Campbell v. Joint District 28-J, 704 F.2d 501, 504 (10th Cir.1983) (extraordinary force); Alabama Electric Cooperative, Inc. v. First National Bank of Akron, Ohio, 684 F.2d 789, 792 (11th Cir.1982) (deference). For dramatic illustration of the point, I attach to this opinion as an appendix the headnotes from the West Digest's key number 785, covering cases from 1979 to 1983. They vividly demonstrate the cadence to which others are marching and from which we today fall completely out of step.
 
 
 37
 The majority adopts the polar opposite view that the district court is entitled to no consideration. It makes the unique assertion that "we cannot have independent de novo review and still defer to the decision of the district court: the concepts are inconsistent." The majority is misusing those terms as they are applied in this context. The majority's confusion is evident in its repeated mischaracterization of the standard which it today rejects. It says we have permitted reversal only for "clear error." As the following discussion demonstrates, that is not the standard which this court, or other circuit courts, have properly applied to questions of state law.
 
 
 38
 Appellate courts exercise de novo review over all questions of law, whether state or federal. Appellate courts may, and, as the cases demonstrate overwhelmingly, do substitute their judgments for the judgments of district courts on state as well as federal issues. By giving "substantial deference," or what I believe to be the better phrase, "great weight," to the decisions of the district courts, appellate courts do not suspend their own thought processes. They treat the expertise of the district judge in local law as a factor that requires a careful review of the district court's decision before the appellate court reaches a different conclusion. The circuits have not, as the majority would have us believe, been guilty of a massive "abdication" of responsibility.
 
 
 39
 The appropriate analysis should begin with the difference between appellate review of issues of fact and issues of law. The standard of review for questions of fact tried to a district court is set forth expressly in Rule 52(a) of the Federal Rules of Civil Procedure: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."Drawn from prior equity practice, see Fed.R.Civ.P. 52, Notes of Advisory Committee on Rules, the rule means that as to matters of fact, the appellate court is bound by the trial court's findings unless the appellant demonstrates that a finding is clearly erroneous. See Purer & Co. v. Aktiebolaget Addo, 410 F.2d 871, 878 (9th Cir.), cert. denied, 396 U.S. 834, 90 S.Ct. 90, 24 L.Ed.2d 84 (1969). The rule recognizes that the district court is in a unique position to admit the evidence, hear the testimony, and evaluate the credibility and demeanor of witnesses. See, e.g., Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 855, 102 S.Ct. 2182, 2188, 72 L.Ed.2d 606 (1982). The appellate court is not free to substitute its judgment on the meaning of the evidence for that of the district court. Inwood Laboratories, 456 U.S. at 857-58, 102 S.Ct. at 2190.
 
 
 40
 The district court's conclusions of law, in contrast, are freely reviewable by the appellate court unfettered by the limitations of Rule 52(a). See United States v. Mississippi Valley Generating Co., 364 U.S. 520, 526, 81 S.Ct. 294, 297, 5 L.Ed.2d 268 (1961); United States v. Rosales, 584 F.2d 870, 872 (9th Cir.1978); Phoenix Title and Trust Co. v. Stewart, 337 F.2d 978, 985 (9th Cir.1964), cert. denied, 380 U.S. 979, 85 S.Ct. 1335, 14 L.Ed.2d 273 (1965). The record is not closed, and the appellate court may review all relevant legal authorities. In questions of law "we are not confined to the 'clearly erroneous' or some other restricted standard of review, but it is our duty to exercise our independent judgment ...." Rosales, 584 F.2d at 872.
 
 
 41
 Yet differences exist between the appellate and the district courts in their respective relationships to the law of a particular state. As a practical matter district judges hear a great number of cases involving the law of their home states. This court's appellate jurisdiction, on the other hand, encompasses nine states, and questions of state law arise from all of them. Moreover, district judges generally have practiced within a state for some years while appellate court judges, more often than not, have no similar relationship to the law of the state in question.
 
 
 42
 Giving special consideration to district court decisions on state law issues does not mean that appellate court review should be narrower in character than its review of other legal questions. The point has been well expressed in our own circuit:
 
 
 43
 An Appellate Court should give great weight to the determinations of state law made by a district judge experienced in the law of that state, but the parties are entitled to a review of the trial court's determinations of state law just as they are as to any other legal question in the case.
 
 
 44
 Portland General Electric Co. v. Pacific Indemnity Co., 574 F.2d 469, 471 (9th Cir.1978).
 
 
 45
 The majority overreacts to a problem that is basically one of terminology. The phrase this Circuit, and to some extent the Tenth Circuit, has used most frequently is that the appellate court will follow the district court's interpretation of state law unless it is "clearly wrong." The wording of this formulation is similar to the Rule 52(a) "clearly erroneous" standard of review of factual findings. This similarity is unfortunate, for it connotes that a district court's decision on a legal issue binds the appellate court just as a district court finding of fact binds the appellate court. In some opinions, we have even used the phrase "clearly wrong" and "clearly erroneous" interchangeably. See, e.g., Donaldson v. United States, 653 F.2d 414, 416 (9th Cir.1981); Gaines v. Haughton, 645 F.2d 761, 770 (9th Cir.1981), cert. denied, 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982). The result has been a tendency in a few of our decisions to look only to whether plausible support exists for the district court's legal conclusion, thereby according it presumptive validity. See, e.g., Monte Carlo Shirt, Inc. v. Daewoo International (America) Corp., 707 F.2d 1054, 1056-57 (9th Cir.1983); Smith v. Sturm, Ruger & Co., 524 F.2d 776, 778 (9th Cir.1975).
 
 
 46
 Such excessive reliance on the district court has led to criticism of our formulation.[T]here is some tendency ... to say that if the trial court has reached a permissible conclusion under state law, the appellate court cannot reverse even if it thinks the state law to be otherwise, thereby treating the question of state law much as if it were a question of fact. The determination of state law, however, is a legal question, and although the considered decision of a district judge experienced in the law of the state naturally commands the respect of an appellate court, a party is entitled to meaningful review of that decision just as he is of any other legal question in the case ....
 
 
 47
 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 4507, at 107-09 (1982). See 1A J. Moore, W. Taggart, A. Vestal & J. Wicker, Moore's Federal Practice p 0.309, at 3128 n. 28 (2d ed. 1983); Wright, supra Sec. 58, at 375-76; Wright & Miller, supra.
 
 
 48
 The Eighth Circuit recognized the problem when it abandoned the "clearly wrong" standard, noting that the legal effect of that formulation might be to "preclude appellate consideration of an issue involving a significant question of law." Luke v. American Family Mutual Insurance Co., 476 F.2d 1015, 1019 n. 6 (8th Cir.1972), cert. denied, 414 U.S. 856, 94 S.Ct. 158, 38 L.Ed.2d 105 (1973). The Eighth Circuit adopted a standard of giving "substantial deference." It did not find such deference inconsistent with its appellate function. We should profit from this example. The majority ignores it.
 
 
 49
 The majority's insistence that giving any weight to the decision of the district court on an issue of state law is an "abdication" of our responsibility to give independent consideration to the question utterly misses the point of the nearly 50 years of experience of the federal appellate courts since Erie. The special weight that should be given to a district court's decision is not intended to make our examination any less thorough or independent. It is intended to make us more careful. Its purpose is to prevent hasty and perhaps arbitrary decisions in areas of local law with which we may not be fully familiar. Giving special consideration to a district court's decision on a state law question is a responsible exercise of appellate authority.
 
 
 50
 The majority endeavors unsuccessfully to find support for its view in United States Supreme Court decisions that defer to decisions of lower federal courts on state law issues. See, e.g., Runyon v. McCrary, 427 U.S. 160, 181-82, 96 S.Ct. 2586, 2599-2600, 49 L.Ed.2d 415 (1976); Bishop v. Wood, 426 U.S. 341, 345-46 & n. 10, 96 S.Ct. 2074, 2077-2078 & n. 10, 48 L.Ed.2d 684 (1976); Bernhardt v. Polygraphic Co. of America, 350 U.S. 198, 204-05, 76 S.Ct. 273, 277, 100 L.Ed. 199 (1956). The majority argues that the Supreme Court's acceptance of lower court decisions on state law issues somehow reflects approval of the proposition that courts of appeals should give no weight to district court expertise. In fact, Supreme Court deference is based upon the very assumption of expertise in local law that the majority today rejects. Thus, in a case in which the court of appeals had ruled on a state law question, the Supreme Court deferred to the court of appeals "[s]ince [the court] is much closer to [state] law than we are ...." United States v. Durham Lumber Co., 363 U.S. 522, 527, 80 S.Ct. 1282, 1285, 4 L.Ed.2d 1371 (1960). In the same sense, district courts are closer to local law than are the circuit courts. Thus the Supreme Court's reasoning requires--not forbids--us to give weight to the district court decision on an unsettled issue of state law.
 
 
 51
 The most regrettable aspect of today's decision is the message it sends to the district courts and the litigants. It suggests to the district courts that time spent thoroughly explaining a state law question is time wasted; we therefore will be deprived of their expertise. At the same time, the majority signals to litigants that reversals will be easier to obtain, thus encouraging more appeals. The inevitable result is that we will be faced with more state law issues, but provided with less guidance. The majority offers this result without any attempt to demonstrate that the standard it now decries has led to unfairness or incorrect results. I therefore dissent.APPENDIX
 
 
 52
 West's Federal Practice Digest 2d (1983 cum. pamphlet) Federal Courts Key # 785: Weight to be accorded trial judge's holding (Ninth Circuit cases deleted):
 
 
 53
 C.A.Ark. 1981. Court of Appeals will give special weight to trial judge's interpretation of state law in diversity cases; nevertheless, Court of Appeals is not bound by district court's interpretation of state law and must reverse if it finds that district court has not correctly applied local law.--Red Lobster Inns of America, Inc. v. Lawyers Title Ins. Corp., 656 F.2d 381.
 
 
 54
 C.A.Ark. 1981. On questions of unsettled state law, Court of Appeals gives great weight to the district court's judgment.--Orlando v. Alamo, 646 F.2d 1288.
 
 
 55
 C.A.Ark. 1979. In diversity action, Federal Court of Appeals would apply law of state to issues before court and, in so doing, give great weight to district court's view of state law.--Foremost Ins. Co. v. Sheppard, 610 F.2d 551.
 
 
 56
 C.A.Ark. 1978. In diversity action, Court of Appeals will give great weight to interpretation of state law reached by trial judge who is familiar with local law.--Luster v. Retail Credit Co., 575 F.2d 609.
 
 
 57
 C.A.Ark. 1978. On appeal, great weight is given to trial judge's interpretation of local law.--Lide v. Carothers, 570 F.2d 253.
 
 
 58
 C.A.Ark. 1977. In a diversity case, interpretation of the district court on a question of state law is entitled to great deference.--Howard v. Green, 555 F.2d 178.
 
 
 59
 C.A.Colo. 1983. Views of the district court interpreting state law carry extraordinary force on appeal when there are no controlling state decisions providing clear precedent.--Campbell v. Joint Dist. 28-J, 704 F.2d 501.
 
 
 60
 C.A.Colo. 1983. Where action is one based on diversity, deference is to be accorded views of resident federal district judge with respect to interpretation and application of law of the state and appellate review is governed by the clearly erroneous standard.--King v. Horizon Corp., 701 F.2d 1313.
 
 
 61
 C.A.Colo. 1979. Views of federal district judge in diversity case, who is resident of state where controversy arose, interpretative of state's laws carry extraordinary force on appeal where there is no controlling state decisions providing clear precedent.--City of Aurora, Colorado v. Bechtel Corp., 599 F.2d 382.
 
 
 62
 C.A.Colo. 1979. Court of Appeals will give substantial weight to trial judge's perception of law of his resident state when law is unclear.--Glenn Justice Mortg. Co., Inc. v. First Nat. Bank of Fort Collins, 592 F.2d 567.
 
 
 63
 C.A.Colo. 1978. A federal appellate court should recognize and give deference to views of federal trial judge as to state law in his resident state, and such views should be accepted, on appeal, unless they be demonstrably in error.--In re Winters, 586 F.2d 1363.
 
 
 64
 C.A.Colo. 1977. In the absence of controlling state decisions interpreting state statutes or precedents, the views of federal district court judge who is resident of state carry extraordinary weight on appeal regarding interpretation of statute.--Adolph Coors Co. v. A & S Wholesalers, Inc., 561 F.2d 807.
 
 
 65
 C.A.Fla. 1982. Interpretation of state law by federal district judge sitting in that state is entitled to deference.--Alabama Elec. Co-op., Inc. v. First Nat. Bank of Akron, Ohio, 684 F.2d 789.
 
 
 66
 C.A.Ga. 1979. A Georgia federal district judge's interpretation of Georgia law was entitled to deference by Court of Appeals.--Kaufman and Broad Home Systems, Inc. v. International Broth. of Firemen and Oilers, AFL-CIO, 607 F.2d 1104, rehearing denied 612 F.2d 579.
 
 
 67
 C.A.Ill. 1983. Where no authoritative resolution of a legal issue had been rendered by state courts, district court's construction of state law on that issue is entitled to great weight on appellate review.--Lamb v. Briggs Mfg., a Div. of Celotex Corp., 700 F.2d 1092.
 
 
 68
 C.A.Iowa 1978. The views of able and experienced district judges with respect to questions of local law are entitled to great weight.--Green v. American Broadcasting Companies, Inc., 572 F.2d 628.
 
 
 69
 C.A.Iowa 1977. Great weight is accorded district court's determination of questions of state law.--Merchants Mut. Bonding Co. v. Appalachian Ins. Co., 556 F.2d 899.
 
 
 70
 C.A.La. 1982. Great deference should be accorded to a district judge's interpretation of the law of his or her state.--Trahan v. First Nat. Bank of Ruston, 690 F.2d 466.
 
 
 71
 C.A.La. 1982. In a diversity case, great deference is accorded the conclusions of state law reached by the district judge, schooled and skilled in the law of her state.--O'Toole v. New York Life Ins. Co., 671 F.2d 913, rehearing denied 677 F.2d 113.
 
 
 72
 C.A.La. 1982. In diversity cases which involve questions of local law, Court of Appeals will show deference to opinion of district court and give its views great weight, since federal judge who sits in particular state and has practiced before its courts is better able to resolve difficult questions about law of that state than other federal judges lacking such experience.--Commonwealth Life Ins. Co. v. Neal, 669 F.2d 300.
 
 
 73
 C.A.La. 1982. In diversity cases, when no state court decisions are available, opinion of federal judge sitting in state whose law is to be applied is accorded special deference.--Robertshaw Controls Co. v. Pre-Engineered Products, Co., Inc., 669 F.2d 298.
 
 
 74
 C.A.Md. 1983. In determining state law in diversity cases where there is no clear precedent, Courts of Appeals are disposed to accord substantial deference to opinion of federal district judge because of his familiarity with state law which must be applied.--Caspary v. Louisiana Land and Exploration Co., 707 F.2d 785.
 
 
 75
 C.A.Minn. 1983. Court of Appeals gives great weight to conclusions of local district judge on questions of state law.--O'Brien v. Heggen, 705 F.2d 1001.
 
 
 76
 C.A.Minn. 1982. On questions of state law, Court of Appeals normally defers to judgment of district court sitting in the particular state involved.--In re Schwen's, Inc., 693 F.2d 48.
 
 
 77
 C.A.Minn. 1982. Court of Appeals gives great weight to conclusions of local district judge on questions of state law.--Bergstrom v. Sambo's Restaurants, Inc., 687 F.2d 1250.
 
 
 78
 C.A.Minn. 1982. Court of Appeals accords great weight to conclusions of local trial judge on questions of state law.--Sperry Corp. and its Sperry Univac Div. v. City of Minneapolis, 680 F.2d 1234.
 
 
 79
 C.A.Minn. 1979. District court was entitled to deference from Court of Appeals on questions of law of state wherein district court sat.--Schuster v. U.S. News & World Report, Inc., 602 F.2d 850.
 
 
 80
 C.A.Miss. 1982. In diversity cases, Court of Appeals will accord special deference to decision of a federal district judge on the application of the law of the state in which he sits especially when a statutory scheme is less than clear and capable of varying interpretation.--Golden v. Cox Furniture Mfg. Co., Inc., 683 F.2d 115, rehearing denied 685 F.2d 1385.
 
 
 81
 C.A.Miss. 1980. Federal district court judge's determination on law in his state is generally entitled to great weight on review.--Watson v. Callon Petroleum Co., 632 F.2d 646.
 
 
 82
 C.A.Miss. 1980. In the absence of controlling Mississippi precedent, the Court of Appeals, reviewing judgment rendered in Mississippi diversity suit, was required to decide whether an employer might be liable in damages for discharging an employee for pursuing his workmen's compensation rights as the court believed the Mississippi court would decide the issue and, in this regard, special weight was to be given to determination of district court judge who was familiar with local law.--Green v. Amerada-Hess Corp., 612 F.2d 212, rehearing denied 614 F.2d 1298, certiorari denied 101 S.Ct. 356, 449 U.S. 952, 66 L.Ed.2d 216.
 
 
 83
 C.A.Miss. 1978. When state decisional law affords no guidance, interpretation of district judge, who was well versed in intricacies and trends of local law, is entitled to great deference.--Black v. Fidelity & Guaranty Ins. Underwriters, Inc., 582 F.2d 984.
 
 
 84
 C.A.Mo. 1983. The appellate court should give great deference to district court's determination of state law unless it is fundamentally deficient in analysis or otherwise lacking in reasoned authority.--Kansas City Power and Light Co. v. Burlington Northern R. Co., 707 F.2d 1002.
 
 
 85
 C.A.Mo. 1983. Interpretation of state law by district judge sitting in that forum is entitled to substantial deference in absence of controlling state precedent.--Nelson By Wharton v. Missouri Div. of Family Services, 706 F.2d 276.
 
 
 86
 C.A.Mo. 1983. Court of Appeals would defer to district court's interpretation of state law.--Glover v. Metropolitan Life Ins. Co., 698 F.2d 947.
 
 
 87
 C.A.Mo. 1983. Though district court's interpretation of the local law is entitled to great weight in diversity cases in which such law governs the issues, Court of Appeals is not bound by district court's interpretation of state law and must reverse if Court of Appeals finds that the district court has not correctly applied local law or if such interpretation of state law is fundamentally deficient in analysis or interpretation of state law is fundamentally deficient in analysis or otherwise lacking in reasoned authority.--R.W. Murray Co. v. Shatterproof Glass Corp., 697 F.2d 818.
 
 
 88
 C.A.Mo. 1982. Substantial deference is accorded district court's interpretation of local law in absence of controlling state precedent.--Renfroe v. Eli Lilly & Co., 686 F.2d 642.
 
 
 89
 C.A.Mo. 1980. Where issues in federal court are governed by state law, opinion of local federal district judge interpreting such law is entitled to great weight.--Hunter v. U.S., 624 F.2d 833.
 
 
 90
 C.A.Mo. 1980. Court of Appeals customarily defers to views of district court on questions of law of their forum states.--Jump v. Goldenhersh, 619 F.2d 11.
 
 
 91
 C.A.Mo. 1979. Federal court gives great weight to conclusion of local trial judge on questions of state law.--Lamb v. Amalgamated Labor Life Ins. Co., 602 F.2d 155.
 
 
 92
 C.A.Mo. 1978. Court of Appeals will give special weight to trial judge's interpretation of state law in diversity cases; nevertheless, court is not bound by district court's interpretation of state law and must reverse if it finds that district court has not correctly applied local law.--Bazzano v. Rockwell Intern. Corp., 579 F.2d 465.
 
 
 93
 C.A.Mo. 1978. In diversity case, Court of Appeals will accord great weight to conclusions of local judge on questions of local law.--Bergstreser v. Mitchell, 577 F.2d 22.
 
 
 94
 C.A.Mo. 1976. Rodeway Inns of America, Inc. v. Frank, 541 F.2d 759, certiorari denied 97 S.Ct. 1580, 430 U.S. 945, 51 L.Ed.2d 792.
 
 
 95
 C.A.Neb. 1983. In diversity cases in which state law governs issues, district court's interpretation of that local law is entitled to great weight; however, Court of Appeals is not bound by district court's interpretation of state law and must reverse if it finds that district court has not correctly applied local law, or if such interpretation of state law is fundamentally deficient in analysis or otherwise lacking in reasoned authority.--Gillette Dairy, Inc. v. Mallard Mfg. Corp., 707 F.2d 351.
 
 
 96
 C.A.Neb. 1983. Court of Appeals is not bound by trial judge's interpretation of state law, but such interpretation is nonetheless given special weight in diversity cases.--Kizzier Chevrolet Co., Inc., of Scottsbluff, Neb. v. General Motors Corp., Oldsmobile Div., 705 F.2d 322.
 
 
 97
 C.A.Neb. 1982. Interpretation of state law by a district judge sitting in that forum is entitled to great deference.--Lewis Service Center, Inc. v. Mack Financial Corp., 696 F.2d 66.
 
 
 98
 C.A.Neb. 1982. Although trial judge's interpretation of state law does not bind Court of Appeals, such interpretation deserves great weight.--Zrust v. Spencer Foods, Inc., 667 F.2d 760.
 
 
 99
 C.A.Neb. 1981. Court will give deference to district court's findings on state laws where there is no strong argument that such choice of law is fundamentally deficient in analysis or otherwise lacking in reasoned authority.--Ancom, Inc. v. E.R. Squibb & Sons, Inc., 658 F.2d 650.
 
 
 100
 C.A.Neb. 1979. With respect to questions of substantive state law, opinion of experienced local judge is entitled to great weight.--McPherson v. Sunset Speedway, Inc., 594 F.2d 711.
 
 
 101
 C.A.Neb. 1977. Although Court of Appeals is not bound by district court's interpretation of local law in a diversity case, "great weight" is to be accorded its determination.--Lincoln Carpet Mills, Inc. v. Singer Co., 549 F.2d 80.
 
 
 102
 C.A.N.M. 1980. Where New Mexico Supreme Court had not ruled on issues presented in motorcycle insurer's action seeking a declaration with respect to its liability for injuries sustained by passenger of insured motorcycle, decision of Court of Appeals on substantive law issues presented would be predicated on its interpretation of how New Mexico Supreme Court would construe the law if faced with similar facts and issues; in that regard, resident district court's views on questions of New Mexico law would carry extraordinary force since there were no controlling state decisions providing clear precedent.--Farmers Alliance Mut. Ins. Co. v. Bakke, 619 F.2d 885.
 
 
 103
 C.A.N.M. 1978. Court of Appeals defers to resident district judge's view on an unsettled question of state law unless it appears clearly wrong.--Mendoza v. K-Mart, Inc., 587 F.2d 1052.
 
 
 104
 C.A.N.M. 1978. Federal court will ordinarily accept view of resident district judge on unsettled law of his state unless it is clearly wrong.--Vallejos v. C.E. Glass Co., 583 F.2d 507.
 
 
 105
 C.A.N.D. 1979. In diversity suit for declaratory judgment, rights of parties were governed by law of state, and with respect to that, law opinions of experienced local district judge were entitled to great weight. 28 U.S.C.A. Sec. 2201.--American Motorists Ins. Co. v. Samson, 596 F.2d 804.
 
 
 106
 C.A.N.D. 1977. Views of a bankruptcy judge and a district judge on questions of purely local law are entitled to substantial weight. Bankr.Act, Sec. 6, 11 U.S.C.A. Sec. 24.--Grenz Super Valu v. Fix, 566 F.2d 614.
 
 
 107
 C.A.N.D. 1977. Court of Appeals usually gives deference to a district court's interpretation of state law.--Dakota Nat. Bank & Trust Co. v. First Nat. Bank & Trust Co. of Fargo, 554 F.2d 345, certiorari denied 98 S.Ct. 229, 434 U.S. 877, 54 L.Ed.2d 157.
 
 
 108
 C.A.N.D. 1977. Court of Appeals was bound to give great weight to district court's construction of applicable state law in diversity case.--Jamestown Farmers Elevator, Inc. v. General Mills, Inc., 552 F.2d 1285.
 
 
 109
 C.A.Okl. 1980. Degree of deference should be given to resident federal district judge who was passing on question involving local state law.--Obieli v. Campbell Soup Co., 623 F.2d 668.
 
 
 110
 C.A.Okl. 1980. In a diversity case, views of federal district judge who is a resident of the state where the controversy arose, interpretive of state's laws, carry extraordinary force on appeal where there are no controlling state decisions providing clear precedent.--Lyles v. American Hoist & Derrick Co., 614 F.2d 691.
 
 
 111
 C.A.Okl. 1979. Some deference is due federal district judge's determination of law of his resident state when law is unclear.--Travelers Ins. Co. v. Panama-Williams, Inc., 597 F.2d 702.
 
 
 112
 C.A.Okl. 1977. Great deference is to be accorded views of resident federal district judge relative to interpretation and application of law of his state in absence of controlling precedents opined by highest court of that state, however, where state's highest court has opined, question is then one of law and Court of Appeals review is governed by "clearly erroneous" rule and reversal is required only if appellate court's review results in firm conviction that mistake has been committed. Fed.Rules Civ.Proc. rule 52, 28 U.S.C.A.--Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202.
 
 
 113
 C.A.Okl. 1977. The trial court's finding that partnership was not the continuation of corporation involved a question of state law, and if there were no controlling state precedents, the resident federal district judge's interpretation and/or application of state law must be given extraordinary force on appeal.--R.J. Enstrom Corp. v. Interceptor Corp., 555 F.2d 277.
 
 
 114
 C.A.Okl. 1976. DeBoer Const., Inc. v. Reliance Ins. Co., 540 F.2d 486, certiorari denied 97 S.Ct. 741, 429 U.S. 1041, 50 L.Ed.2d 753.
 
 
 115
 C.A.Okl. 1975. Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 516 F.2d 33, on remand 411 F.Supp. 705, reversed 561 F.2d 202.
 
 
 116
 C.A.Puerto Rico 1979. When court is faced with question involving proper construction of Puerto Rico law, court gives considerable deference to district judges who are citizens of Puerto Rico and well-versed in the Spanish underpinnings of Puerto Rico law.--Gual Morales v. Hernandez Vega, 604 F.2d 730.
 
 
 117
 C.A.Puerto Rico 1979. Much deference is accorded to district court's construction of law of locality in which it sits.--Garcia v. Friesecke, 597 F.2d 284, certiorari denied 100 S.Ct. 292, 444 U.S. 940, 62 L.Ed.2d 306.
 
 
 118
 C.A.Puerto Rico 1978. Court of Appeals generally will not consider claims not raised before district court, and particularly where question involves proper construction of Puerto Rican law, deference to district judges who are Spanish speaking and trained in Spanish civil law is warranted.--Gual Morales v. Hernandez Vega, 579 F.2d 677, on remand Morales v. Vega, 461 F.Supp. 656, affirmed 604 F.2d 730.
 
 
 119
 C.A.S.C. 1977. In the absence of definitive interpretation of statutes by state Supreme Court, Court of Appeals would defer to conclusion reached by district judge whose service as state and federal judge had made him familiar with the laws of the state.--U.S. v. Burnsed, 566 F.2d 882, certiorari denied 98 S.Ct. 1270, 434 U.S. 1077, 55 L.Ed.2d 784.
 
 
 120
 C.A.S.D. 1983. District court's determination of state law is not binding on Court of Appeals.--Kotval v. Gridley, 698 F.2d 344.
 
 
 121
 C.A.S.D. 1980. In a diversity case, the Court of Appeals gives great weight to the district court's view of state law.--Greenwood Ranches Inc. v. Skie Const. Co., Inc., 629 F.2d 518.
 
 
 122
 C.A.Tenn. 1981. Federal Court of Appeals, in reviewing a district judge's interpretation of state law, is to give considerable weight to such interpretation.--Bagwell v. Canal Ins. Co., 663 F.2d 710.
 
 
 123
 C.A.Tenn. 1981. District judge's rulings on a matter of state law are entitled to respect by the Court of Appeals.--Transamerica Ins. Group v. Beem, 652 F.2d 663.
 
 
 124
 C.A.Tex. 1981. In reviewing a diversity action, Court of Appeals is reluctant to substitute its views of the state law for those of the district court judge.--Cole v. Elliott Equipment Co., 653 F.2d 1031.
 
 
 125
 C.A.Tex. 1980. Federal district court judge's determination on law in his state is entitled to great weight on review.--Avery v. Maremont Corp., 628 F.2d 441.
 
 
 126
 C.A.Utah 1982. Deference is to be accorded views of resident federal district judge with respect to interpretation and application of law of his state absent controlling precedents held by highest court of that state.--Loveridge v. Dreagoux, 678 F.2d 870.
 
 
 127
 C.A.Wis. 1982. District court's construction of state law on issue state courts have not addressed is given great weight on appellate review.--Murphy v. White Hen Pantry Co., 691 F.2d 350.
 
 
 128
 C.A.Wyo. 1980. Where there are no controlling state decisions providing clear precedent, the views of the resident district judge on matters of state law carry extraordinary force on appeal.--Amoco Production Co. v. Guild Trust, 636 F.2d 261, certiorari denied 101 S.Ct. 3123, 452 U.S. 967, 69 L.Ed.2d 981.
 
 
 129
 C.A.Wyo. 1980. Absent clear error, Court of Appeals will defer to trial court's interpretation of state law of its district.--Smith v. Equitable Life Assur. Soc., 614 F.2d 720.
 
 
 130
 C.A.Wyo. 1978. Trial judge, having been a member of Wyoming bar and a practitioner, was presumed to be in superior position to predict from the evidence available whether Wyoming would follow majority or minority doctrine on subject involved in diversity action.--Fox v. Ford Motor Co., 575 F.2d 774.
 
 
 131
 C.A.Wyo. 1978. An interpretation of a state's laws by a federal district judge who is a resident of state where controversy arose carries extraordinary force on appeal in a diversity case where there are no state decisions directly on point or none which provide a clear precedent. Fed.Rules Civ.Proc. rule 52(a), 28 U.S.C.A.--Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp., 571 F.2d 1144, certiorari denied 99 S.Ct. 183, 439 U.S. 862, 58 L.Ed.2d 171.
 
 
 
 [1]
 Two of our recent cases indicate some departure from the "clear error" standard. See Insurance Company of North America v. Howard, 679 F.2d 147, 150 (9th Cir.1982) and Bank of California, N.A. v. Opie, 663 F.2d 977, 979 (9th Cir.1981) (according little or no special deference where the district court relies on state law that offers only general guidance)
 
 
 [2]
 Some of the cases relying upon Scandinavian Airlines are Airlift International, Inc. v. McDonnell Douglas Corp., 685 F.2d 267, 269 (9th Cir.1982); Aeronaves De Mexico, S.A. v. McDonnell Douglas Corp., 677 F.2d 771, 772 (9th Cir.1982); S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Boeing Company, 641 F.2d 746, 754 (9th Cir.1981); Purvis v. Consolidated Energy Products Co., 674 F.2d 217, 220, 224 (4th Cir.1982); International Knights of Wine, Inc. v. Nave Pierson Winery, Inc., 110 Cal.App.3d 1001, 1006, 168 Cal.Rptr. 301, 303 (Cal.Ct.App.1980)
 
 
 [3]
 Theoretically, if a second district judge disagreed with the first district judge and the appellate panel has only held that the decision of the first judge was not "clear error," the second judge could hold to the contrary and the appellate panel should affirm if the decision of the second district judge also was "not clear error." This illustrates the fallacy of our present standard of review. As a practical matter, the circuit court opinion would probably be relied upon as though it were an independent de novo construction of state law, which it is not