841 F.2d 1129
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 James E. PERKINS, Plaintiff-Appellant,
v.
UNION OIL COMPANY OF CALIFORNIA, Defendant-Appellee.
 No. 87-3723.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 7, 1988.
Decided March 3, 1988.
 Appeal from the United States District Court for the District of Alaska; Andrew J. Kleinfeld, District Judge, Presiding.
 Before EUGENE A. WRIGHT, ALARCON and POOLE, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiff-Appellant James E. Perkins (Perkins) appeals from the district court's entry of summary judgment of dismissal of his complaint for damages for breach of contract. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 
 3
 Perkins was employed by Defendant-Appellee Union Oil Company of California (Unocal) at Unocal's chemical plant at Kenai, Alaska for approximately six years. During that period Unocal issued an employee handbook which provides, in pertinent part:
 
 II. DEMOTION, DISCIPLINE AND DISCHARGE
 
 4
 * * *
 
 
 5
 * * *
 
 
 6
 C. [a]ny employee who feels he has been unjustifiably disciplined by his supervisor shall have the right to present the matter as a grievance in accord with the Grievance Procedure.
 
 
 7
 The handbook outlines the grievance procedure in three steps. First, the employee "discuss[es]" the matter with his supervisor and the department head within five days of the questioned action. Second, if the matter is not resolved by discussion, the employee must request a conference with the plant manager within five days. The manager must then arrange the conference within five working days. Third, if the matter remains unresolved, the employee appeals, within five days, to the Vice President of Manufacturing. The Vice President must issue his decision within five working days. Perkins claims the handbook constitutes an implied employment contract; Unocal conceded this issue for purposes of its summary judgment motion.
 
 
 8
 Because of the possibility that plant employees will be exposed to harmful levels of ammonia, Unocal is required to provide employees with respirators. See Alaska Occupational Safety and Health Standards Sec. 01.0403(a)(2). Further, it is prohibited from allowing employees' facial hair to interfere with respirator use. Id., Sec. 01.0403(e)(5)(A). Prior to February 1984, to ensure the effective operation of the respirators, Unocal administered "banana oil" tests designed to discover whether the employee obtains a "good seal" between his face and the respirator mask. Banana oil was applied to the employee's face to determine whether the scent penetrated the mask. Eventually Unocal decided that the subjective nature of the test rendered it unreliable; a bearded employee could defeat the safety objective and maintain a dangerous beard by simply pretending not to smell the oil. Accordingly, in February 1984, Unocal gave employees written notice that beginning March 1, to comply with Alaska OSHA rules on respiratory protection, employees' beards must "be trimmed to permit rapid donning of respiratory equipment and to effect a good seal to the face for such equipment." The written notice warned that non-compliance would be punished by a three day suspension, and, if necessary, discharge. Unocal supplemented the written notice by orally advising bearded employees that no beards longer than one half inch would be permitted. On March 22, after a "break-in" period, Perkins was ordered to trim his beard to the required length. He requested, and received, a copy of the AOSHA regulations. Finding no explicit one-half inch limitation, Perkins decided to fight the rule. He believed that as long as he could don his respirator rapidly and obtain a good seal, the company had no right to force him to trim his beard.
 
 
 9
 Perkins reported the following day with his beard trimmed, but not to the required extent. He was called into the office of his supervisor, Charles Ross. The content of that conversation is disputed. According to Perkins, he informed Ross he wished to "protest and contest" the company's policy. Ross told him the matter was not open for discussion, that the company was anxious to make an example of someone, and that he would be fired if he pursued the matter. It is not disputed that Perkins demanded, and was refused, an opportunity to prove he could obtain a good, quick seal despite his beard's length. Ross suspended Perkins for three days. However, he subsequently telephoned Perkins and advised him he could return to work as soon as he trimmed his beard as required. Perkins refused, declaring he would not "toady" to Unocal's demands.
 
 
 10
 Perkins returned to the plant on March 26 without having trimmed the beard. He was sent to see department head Jerry Corcoran. Corcoran was unreceptive to Perkins request for an individual test; rather, according to Perkins, he launched into a tirade and fired him. Perkins concedes he did not demand a meeting with the plant manager; he explains that further discussion would have been futile. Instead, he brought suit in Alaska Superior Court for breach of employment contract, claiming he was fired without the required just cause and denied his contractual right to grieve the dispute. Unocal removed the action to federal court on the basis of diversity of citizenship. 28 U.S.C. Sec. 1441(a). The district court granted Unocal's motion for summary judgment, holding that Perkins had no contractual right to grieve the beard policy. It further held that the suspension was a grievable disciplinary action, but that Perkins had failed to exhaust his contractual remedies.
 
 
 11
 Perkins raises four issues on appeal. He claims that Unocal breached the employment contract by (1) denying him the opportunity to grieve the beard policy, (2) discharging him without just cause, (3) treating him unfairly, and (4) denying him the opportunity to grieve his suspension. None of these is meritorious.[1]
 
 
 12
 The threshold question is whether, under the handbook, Unocal's policy decisions are themselves grievable. If Perkins was not entitled to grieve the policy, then Unocal's refusal to do so did not breach the employment contract. Contract interpretation is a question of law which we review de novo. Miller v. Safeco Title Ins. Co., 758 F.2d 364, 367 (9th Cir.1985). Unocal argues that the language of the contract clearly provides for grievance of disciplinary actions only--not the propriety or wisdom of company policies which may trigger them. We agree. Perkins theory that every employment-related issue is subject to the grievance procedure finds no support in the handbook. Neither the language nor structure of that document yield any indication that Unocal is amenable to discussion of its policy decisions, in the abstract, with any employee who disagrees. Especially probative is the limited period provided for filing a protest. Short limitations periods are ill-suited to challenges to policies. The adverse consequences of a new policy which move the employee to formal protest may not be felt or identified for some time. We doubt Unocal intended to provide a forum with such an inherent defect. Rather, we believe Unocal intended to provide a forum solely for challenges to concrete, disciplinary actions which create immediate, redressable, easily defined injuries. We will not lightly infer an intent to open the wisdom of the company's every decision to debate; we find no basis for that inference here. We conclude that Perkins had no right to grieve the validity or wisdom of the beard policy, and therefore Unocal's refusal to grieve the matter did not amount to a breach of contract.
 
 
 13
 Perkins also claims Unocal denied him his contractual right to be discharged only for good cause. He contends he was fired for attempting to grieve the beard policy; Unocal maintains he was fired for his willful failure to comply with that policy.[2] Unocal's notice announcing the policy also announced the effect of noncompliance. In terminating Perkins, Unocal was merely living up to its promise. None of Perkins' arguments persuade us that a reasonable jury could find to the contrary. Ross' post-suspension telephonic offer to reinstate Perkins if he trimmed his beard is convincing proof that Perkins failure to comply motivated his termination. Contrary to Perkins' assertion, willful noncompliance with a reasonable employer directive constitutes good cause for discharge. Central Alaska Broadcasting, Inc. v. Bracale, 637 P.2d 711, 712-13 (Alaska 1981). Our conclusion that Unocal was justified in discharging Perkins also disposes of his claim that Unocal breached the implied covenant of good faith and fair dealing. There is nothing sinister in terminating an employee who refuses to follow reasonable orders.
 
 
 14
 Finally, Perkins contends he was denied the opportunity to grieve the suspension when Unocal discharged him prior to completion of the process. The district court found that Perkins had a right to grieve the suspension and properly initiated the grievance procedure, but unjustifiably failed to complete it.
 
 
 15
 We agree. Perkins cannot complain that he was denied the right to grieve the suspension when he made no effort to do so. Perkins' discharge did not terminate his right to grieve the suspension. Moreover, an employee must exhaust his contractual remedies, or show that he was excused from doing so, before filing suit against his employer. Casey v. City of Fairbanks, 670 P.2d 1133, 1136 (Alaska 1983). Perkins subjective belief that further discussion would be meaningless does not excuse his failure to complete the process. Thus Perkins failure to follow through not only deprived Unocal of the opportunity to breach the contract; it also deprives Perkins of the opportunity to convince us that they did.
 
 
 16
 The judgment is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3
 
 
 [1]
 The district court's order granting Unocal's motion for summary judgment is reviewed de novo. Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986). We examine the evidence in the light most favorable to Perkins and draw all reasonable inferences in his favor. We can affirm only if there is no genuine issue of material fact and Unocal is entitled to judgment as a matter of law. Ashton v. Cory, 780 F.2d 816, 818 (9th Cir.1986). The district court's interpretation of Alaska law is also reviewed de novo. In re McLinn, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc)
 
 
 [2]
 Unocal also contends that it could not have fired Perkins for attempting to grieve the issue because no one at Unocal was aware that he was attempting to grieve it. But the core of Perkins' argument is that he was fired for his opposition to the policy; therefore, it does not depend on whether Unocal knew him to be formally protesting